IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

STEVEN RYNDERS,                                )
                                               )
        Plaintiff,                      )
                                               )
vs.                                            )   Civil No.   12-cv-605-CJP
                                               )
MICHAEL J. ASTRUE,                             )
Commissioner of Social Security,               )
                                               )
        Defendant.                      )

**MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Steven Rynders is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB).[1]

**Procedural History**

Mr. Rynders applied for benefits in April, 2008, alleging disability beginning on June 28, 2006. (Tr. 213). The application was denied initially and on reconsideration. After holding a hearing, ALJ Joseph W. Warzycki denied the application for benefits in a decision dated October 28, 2010. (Tr. 15-23). Plaintiff's request for review was denied by the Appeals Council, and the decision of the ALJ became the final agency decision. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 15.

1

**Issue Raised by Plaintiff**

Plaintiff argues that the ALJ erred in ignoring medical evidence which showed that he had surgery prior to June, 2005, to repair a right rotator cuff injury and that he was diagnosed with left shoulder impingement syndrome in 2007.

**Applicable Legal Standards**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.  For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   **42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).**

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   **42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C).**  However, limitations arising from alcoholism or drug use are excluded from consideration of whether a claimant is disabled.   **42 U.S.C. §423(d)(2)(C); 20 C.F.R. §404.1535.**

"Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   **20 C.F.R. §§ 404.1572**.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step

> assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

***Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).**

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  ***Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992); see also, 20 C.F.R. §§ 404.1520(b-f).**

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.    The scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g)**.   Thus, this Court must determine not whether Mr. Rynders was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  **See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996)** (citing ***Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)**).

This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  ***Richardson v. Perales*, 402 U.S. 389, 401 (1971).**

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.  **Brewer v. Chater**, 103 F.3d 1384, 1390 (7th Cir. 1997).  However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, **Parker v. Astrue**, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Warzycki followed the five-step analytical framework described above. He determined that Mr. Rynders had not been engaged in substantial gainful activity since the alleged onset date, and that he had severe impairments of degenerative disc disease of the lumbar spine and mood disorder.  The ALJ noted that plaintiff claimed disability due to low back pain. He determined that plaintiff's impairments do not meet or equal a listed impairment.  The ALJ said that Mr. Rynders had a work-related low back injury in April, 2005, and that he underwent decompression and fusion at L5-S1 in September, 2006.  He noted that plaintiff alleged "left arm trouble due to a 2003 rotator cuff injury and subsequent repair surgery."  (Tr. 20).

The ALJ found that Mr. Rynders had the residual functional capacity to perform a limited range of work at the light exertional level.  One of his limitations was that he could only occasionally reach overhead.  Based on evidence from a vocational expert, the ALJ found that plaintiff does not have the capacity to perform his past relevant work.  However, he could do other jobs which exist in the national economy, such as flagger and housekeeper.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this

Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff. As plaintiff's arguments relate only to his physical impairments, the Court will not discuss the mental health records.

**1.    Agency Forms**

Mr. Rynders was born in 1957, and was 48 years old when he allegedly became disabled. (Tr. 213). He was last insured for DIB as of December 31, 2012. (Tr. 221).

In a Disability Report, plaintiff said he was unable to work because of "l5 and s1 joint disfunction (sic) on both sides." (Tr. 237). He said that standing, sitting, twisting and bending hurt him, and he kept "going down in the back even after surgery." (Tr. 248). He had previously worked as a construction laborer. (Tr. 249).

Plaintiff wrote on a form that he had a 35% disability in his right arm, which limited his strength, but it "never stopped [him] from working." (Tr. 269). On another form, he wrote that he had trouble opening jars because he had "no strength in hands." He said that he had no problems reaching overhead if it was not repetitive or for more than a few seconds. (Tr. 271).

Mr. Rynders indicated that he saw additional doctors in 2008 and 2009 for his back, stress, anxiety and depression. (Tr. 320). He said that he took medications for back pain, to help him sleep, and for depression and anxiety. (Tr. 324).

**2.    Evidentiary Hearing**

The hearing was originally scheduled for November 5, 2009. It was continued so that Mr. Rynders could get a lawyer. (Tr. 33-45). Mr. Rynders told the ALJ that he had a "35 percent loss" in his left arm and that he had arthritis in his fingers and hands, but that was not documented because he did not go to a doctor for it. The ALJ informed him that his representative could

"request a consultative examination."   (Tr. 43-44).

The hearing was rescheduled for April 20, 2010.   Plaintiff was represented by an attorney at the hearing.   (Tr. 46).

Mr. Williams testified that he lived alone.   He was 5' 9" and weighed about 155 pounds. (Tr. 52).

Plaintiff hurt his low back on the job in 2005.   (Tr. 55).

In the course of describing his daily activities, plaintiff said that he had "trouble with his left arm" because of a torn rotator cuff.   He said that he had not had surgery on it because he could not afford it.   (Tr. 69).

The ALJ asked plaintiff to identify "the main physical reason that prevents you from working."   Mr. Rynders replied, "My back."   (Tr. 74).

ALJ Warzycki asked plaintiff about his shoulders.   Mr. Rynders testified that he had "disability" in his right shoulder.   He said that his left shoulder was worse than his right, and that it was documented that it was "tore."   He had not had any "work" on it.   Plaintiff testified that it bothered him sometimes when he reached above his head, and putting on a shirt "kills my shoulder."   (Tr. 76-77).

Plaintiff testified that he had surgery on his right rotator cuff and he settled a worker's compensation claim based on 35% disability of the right shoulder.   (Tr. 94-95).   He testified that he had "arthritis real bad" in his hands and wrists such that sometimes he could not even open a doorknob.   He had complained to his doctors, but said it had never been diagnosed.   (Tr. 96-97).

A vocational expert (VE) also testified.   The ALJ asked him to assume a person able to lift 20 pounds occasionally and 10 pounds frequently, stand/walk or sit for 6 out of 8 hours each, with

6

additional nonexertional limitations including only occasional reaching overhead with both arms. The VE responded that he could not do plaintiff's past work, but he would be able to do other jobs which exist in significant numbers in the national economy. (Tr. 107-109).

At the end of the hearing, the ALJ indicated that he would get a psychological consultative examination. Plaintiff did not request an additional physical consultative examination. (Tr. 110).

**3.     Medical Records**

As plaintiff does not raise any argument with respect to his back, the Court will only briefly summarize the records related to that impairment. Plaintiff first saw Dr. Robert Schultz, a neurosurgeon, for his back injury in June, 2005. Dr. Schultz noted a past history of arthroscopic repair of a rotator cuff tear, and fractures of the left arm and multiple fingers. (Tr. 502). Dr. Schultz diagnosed a first degree spondylolisthesis at L5-S1, and recommended fusion surgery. As the worker's compensation carrier wanted a second opinion, Mr. Rynders was seen by Dr. Alander, who concurred. The insurance company sent him to another doctor, who recommended a trial of water aerobics and pain management, which did not work. (Tr. 494). In September, 2006, Dr. James Coyle performed a discectomy and fusion at L5-S1. His diagnosis was degenerative disc disease and spondylolisthesis. (Tr. 515-516).

In the years following the surgery, Mr. Rynders continued to complain of pain in his low back radiating into his legs. He was seen by a number of doctors. In May, 2008, he saw Dr. Buchowski at Washington University School of Medicine, in St. Louis, Missouri. This doctor noted that a recent MRI showed a lucent line between the bone graft at L5-S1 and the end plate of S1, suggesting that there might be pseudoarthrosis at that level. Dr. Buchowski recommended that

plaintiff get a CT scan of his lumbosacral spine.   He raised the possibility of a revision surgery, depending on the results of the CT scan.   (Tr. 765-768).   In October, 2008, another doctor at Washington University, Dr. LaBore, saw plaintiff and noted that there was "still a question" as to whether his fusion had failed.   This doctor also noted that plaintiff had been unable to follow through on the recommended work-up because of finances and lack of insurance.   (Tr. 784).

There are several records relating to plaintiff's shoulder complaints.   On February 16, 2007, Dr. Andrew Wayne, a specialist in physical medicine and rehabilitation, noted that Mr. Rynders had a history of right rotator cuff repair.   (Tr. 614).   On March 9, 2007, plaintiff returned to Dr. Wayne for "evaluation and treatment in regards to his chronic, persistent left shoulder pain." Dr. Wayne suspected that he had impingement syndrome and recommended that an MRI of the left shoulder be done.   (Tr. 608).   On March 20, 2007, Dr. Wayne reviewed the results of the MRI and diagnosed left shoulder impingement syndrome without any structural abnormalities.   He recommended a Cortisone shot, which plaintiff declined.   Dr. Wayne also recommended physical therapy.   (Tr. 609).

In March, 2008, plaintiff was examined by Dr. Mirkin in connection with his worker's compensation claim arising out of his back injury.   Dr. Mirkin noted that he had a history of bilateral shoulder pain.   (Tr. 639).

## Analysis

Plaintiff is correct that the ALJ erred by failing to discuss the medical evidence regarding his shoulder complaints.

ALJ Warzycki mentioned plaintiff's shoulders twice.   He first said that Dr. Khan noted in

February, 2010, that plaintiff was "status post remote right rotator cuff repair." (Tr. 19). On the next page, however, he stated that plaintiff "alleged left arm trouble due to a 2003 rotator cuff injury and subsequent repair surgery." (Tr. 20).

The ALJ completely overlooked the diagnosis of left shoulder impingement syndrome given by Dr. Wayne in 2007. To the extent that he considered plaintiff's shoulder complaints at all, he misunderstood the record in that he erroneously concluded that plaintiff's *left* rotator cuff was surgically repaired in 2003, prior to the alleged date of disability.

While the ALJ does not have to discuss every single piece of evidence, he is required to "build a logical bridge from evidence to conclusion." **Vilano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009), and cases cited therein.** This means that the ALJ cannot simply ignore a line of evidence that contradicts his conclusions. Rather, he must "confront evidence that does not support his conclusion and explain why it was rejected." **Indoranto v. Barnhart, 374 F.3d 470, 474 (7th Cir. 2004).** Here, the ALJ's failure to weigh the medical evidence regarding plaintiff's diagnosed left shoulder impingement syndrome was error.

The Commissioner defends the ALJ's decision by arguing that plaintiff claimed disability based on his back injury and mental impairment. It is true that Mr. Rynders' most serious impairment was his back injury. However, it is also true that Mr. Rynders clearly alleged impairment of his shoulders in both his written statements and in his testimony. The assessment of RFC must be based on "all of your medically determinable impairments," including impairments that are not deemed to be "severe." **20 C.F.R. §404.1545(a)(2).** See, *Arnett v. Astrue*, **676 F.3d 586, 592-593 (7th Cir. 2012)**. Dr. Wayne diagnosed and treated left shoulder impingement syndrome. The ALJ erred by failing to consider that medically determinable

9

impairment in his RFC assessment.

The Commissioner also argues that plaintiff's shoulder problems did not cause significant limitations because Dr. Coyle noted in May, 2008, that plaintiff could frequently reach overhead. See, Doc. 13, p. 10.  The Court cannot accept this argument because it relies on reasoning that was not embraced by the ALJ in his decision, in violation of the *Chenery* doctrine, **SEC v. Chenery, 319 U.S. 80, 87-88 (1943)**.  The ALJ did not say that he determined that plaintiff's shoulder problems did not cause significant limitations.  Rather, he failed to discuss plaintiff's shoulder problems.

The ALJ's decision cannot be upheld based upon the Commissioner's after-the-fact rationalization. ***Hughes v. Astrue*, ___ F.3d ___, 2013 WL 163477, *3 (January 16, 2013)** ("Characteristically, and sanctionably, the government's brief violates the *Chenery* doctrine….."); ***McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010)** (It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision....").

Further, the Commissioner's argument actually conflicts with the ALJ's decision.  The ALJ determined that plaintiff was limited to occasional, not frequent, reaching.[2]  See, Tr. 19.  It is completely unclear why the ALJ limited plaintiff to occasional reaching.  He said that he accepted the state agency consultant's RFC assessment (Tr. 21), but the state agency consultant found that plaintiff had no limitations at all in reaching.  (Tr. 764).  The ALJ must build a logical bridge from the evidence to his conclusion.  If a decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required.  ***Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012)**, citing ***Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)**.

---

[2] In this context, frequently means a total of 1/3 to 2/3 of an 8-hour workday.  Occasionally means up to 1/3 of an 8-hour workday.  See, Tr. 751.

Because of the ALJ's errors, this case must be remanded. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Mr. Rynders was disabled during the relevant time period or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

There are only two avenues for remanding a social security case. Remand can be ordered pursuant to sentence four or to sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct. A sentence six remand is not an appealable order. See, *Melkonyan v. Sullivan*, **501 U.S. 89 (1991); Perlman *v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, 195 F.3d 975, 978 (7th Cir. 1999).** Here, a sentence four remand is appropriate.

### Conclusion

The Commissioner's final decision denying Steven Rynders' application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATED:   January 17, 2013.**

s/ Clifford J. Proud
**CLIFFORD J. PROUD
UNITED STATES MAGISTRATE JUDGE**